UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bobby C. Jenkins, # 271240, | ) | C/A No. 5:14-2711-RMG-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | (partial summary dismissal) |
| Brian Shirley, Director of SCDC; | ) | |
| Dr. McRee; | ) | |
| Dr. Zubel; | ) | |
| Dr. Lee; | ) | |
| Dr. Pinto; | ) | |
| Dr. Hanz; | ) | |
| Dr. Lewis; | ) | |
| RN Harper; | ) | |
| NP Enloe; | ) | |
| Terry L. Andrews, Nurse Admin. II, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil action filed pro se by a state prison inmate. Pursuant to 28 U.S.C. §636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the district court. *See* 28 U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

I.      Factual and Procedural Background

On June 30, 2014, Bobby C. Jenkins ("Plaintiff") submitted a Complaint to the mailroom of Perry Correctional Institution ("Perry") for filing in this court. ECF No. 1-1; *see Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court). In his Complaint, Plaintiff

recounts many facts about medical problems he is allegedly having while in the custody of the South Carolina Department of Corrections ("SCDC"). Some of the alleged medical problems appear to be long-term concerns for Plaintiff—review of this court's docket discloses four previous medical indifference claims regarding digestive- and urological-related conditions Plaintiff has filed and litigated in this court since 1999. *See Jenkins v. Anderson*, Civil Action No. 3:00-1747 (pretrial detainee; medical indifference claim; "real bad jock itch" and "private area . . . swollen;" summary judgment for defendant); *Jenkins v. Stafford*, Civil Action No. 3:00-0492-PMD (pretrial detainee; medical indifference claim; "real bad jock itch;" summary judgment for defendant); *Jenkins v. Galmour*, Civil Action No. 3:00-0022-PMD (pretrial detainee; special diet allegedly needed for medical condition; summary judgment for defendant; appeal dismissed); *Jenkins v. J. Reuben Long Det. Cent.*, Civil Action No. 3:99-3500-PMD (special diet required; summary dismissal; wrong defendant); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("'[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'"). According to the SCDC website, Plaintiff was admitted to SCDC custody on December 6, 2000. *See* http://public.doc.state.sc.us/scdc-public/ (last consulted Sept. 9, 2014); *see also In Re Katrina Canal Breaches Consol. Litig.*, 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites, including court records); *Williams v. Long*, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating postings on government websites are inherently authentic or self-authenticating).

The factual allegations in the Complaint now under review specifically reference Plaintiff's state prison medical care for conditions beginning in May 2011. Compl. 5, ECF No. 1. The allegations show that after unsuccessful conservative treatment by Defendant Dr. McRee at McCormick Correctional Institution during the month of June 2011, Plaintiff was taken from Lee Correctional Institution to an outside clinic in Sumter, South Carolina, where a circumcision was performed by Defendant Dr. Zubel on July 25, 2011. Dr. McRee had been treating Plaintiff for "cellulitis" in his genital area. *Id*. at 1, 17. Plaintiff alleges that he subsequently developed complications (back pain, blood in stool, excessive fluid throughout body), but that Defendant Dr. Zubel told him that he would not re-operate on him for the alleged complications "for six months." *Id*. at 7. According to Plaintiff, SCDC medical authorities authorized a CAT scan to be performed sometime around October 2011, and, thereafter, after the complications persisted, Dr. Zubel's "partner," Defendant Dr. Lee, told Plaintiff that he needed to see a dermatologist. *Id*. at 6. Plaintiff states that Perry officials did not immediately set up an appointment with the dermatologist, but, instead, started tampering with his mail and grievances to retaliate for his family calling about his medical condition. *Id*. at 7.[1] Plaintiff alleges that he became depressed when he was given conflicting advice about how to treat his genital problems from the different doctors and because he "lost [his] manhood because of the negligence and deliberate indifference South Carolina Medical Staff had subject[ed him] to by not following the instruction back in the early part of [his] incarceration." *Id*. at 8-9.

---

[1] The alleged mail tampering is the subject of a separate civil action that Plaintiff filed on the same day that he filed this case. *See Jenkins v. Merchant*, Civil Action No. 5:14-cv-02708-RMG-KDW. Plaintiff also has another pending case involving his allegations about prison employees tampering with his food and refusing to follow a prescribed diet to help his digestive problems. *See Jenkins v. Shirley*, Civil Action No. 5:14-cv-2710-RMG-KDW.

In November 2011, Plaintiff saw an outside dermatologist named Dr. Bradford, who is not a defendant in this case. *Id*. at 8, 20. Plaintiff alleges that Dr. Bradford told him that there was nothing he could do for Plaintiff's genital condition at that point and that Plaintiff should see a plastic surgeon, a gastroenterologist, and a vein specialist. *Id*. In early April 2012, Plaintiff received "revision of circumcision" surgery by Defendant Dr. Lee, but Plaintiff alleges that his genital-area pain continued after that surgery. *Id*. at 1, 22, 23. Plaintiff states that he also saw a plastic surgeon, Dr. Hanz, who said he should not have additional surgery or he could suffer complete impotence. *Id*. at 12. Plaintiff alleges that he continued having pain and was again seen by Dr. Lee, the outside urologist. According to Plaintiff, Dr. Lee told him there was nothing he could do and that Plaintiff should go to an "MUSC[2] dermatologist." *Id*. Plaintiff alleges that it took several months, but he was sent to MUSC and was told by the MUSC dermatologist that something could be done by a urologist, not by a dermatologist. *Id*. at 13. Plaintiff alleges that this diagnosis made him depressed and forced him back to prison mental health care, *id*. at 8, because he claims that he "[l]ost [his] manhood" because SCDC staff did not follow instructions from treating physicians. *Id*. at 13. Plaintiff states that he had been scheduled for a May 30, 2012 follow-up visit with the plastic surgery specialist in Sumter, South Carolina, but that he has no "recent medical information." *Id*. at 24. His Complaint does not indicate whether he attended the follow-up visit in Sumter.

Plaintiff additionally alleges that he went to a "GI Specialist" at some point after he was admitted to SCDC and received a diagnosis of diverticulitis, gastritis, and internal and external hemorrhoids. *Id*. at 9. Plaintiff alleges that he continues to bleed from his rectum, but that Defendants Dr. Lewis and Nurse Enloe tell him to keep taking the hemorrhoidal ointment

---

[2] "MUSC" is an abbreviation commonly used for the Medical University of South Carolina.

4

medication he is receiving anyway and that Dr. Lewis and Nurse Enloe refuse to send him "back to the specialist" for additional testing or treatment for his digestive problems. *Id*. Finally, Plaintiff complains of knee, back, and neck pain and alleges that he was "hurt" during an alleged confrontation between him and a corrections officer on February 2, 2014. *Id*. at 10; ECF No. 10-1 at 9. Plaintiff submitted both Step 1 and Step 2 grievances regarding the alleged lack of neck, knee, and back treatment, but he contends that Defendant Harper "lied" in his medical records when Harper indicated Plaintiff had received an X-ray that showed nothing was wrong. ECF No. 1 at 10; ECF No. 10-1 at 9-11. Plaintiff alleges that prison officials believed Defendant Harper's lies and will not provide him with any medical care for his knee and back despite medical reports finding that he has degenerative cervical stenosis and knee problems arising from prior knee surgery. ECF No. 1 at 10. Plaintiff seeks injunctive relief and compensatory and punitive damages. *Id*. at 16.

II.     Standard of Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's pro se Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged

5

with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean this court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to partial summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

III.    Discussion

Plaintiff's Complaint should be partially summarily dismissed insofar as it seeks to hold Doctors Zubel, Lee, Pinto, or Hanz liable to Plaintiff for damages or other relief arising from the medical services they provided to Plaintiff under authorization from the SCDC medical staff. Each of these doctors in private practice provided limited urology and plastic surgery services to Plaintiff and, under Plaintiff's allegations it does not appear that any of them had responsibility for follow-up care or other treatment to Plaintiff once he returned to the confines of the SCDC prison system. Despite Plaintiff's conclusory references to "medical indifference" in his allegations describing the medical treatment these non-prison physicians provided to him, due to the limited nature of the care they provided as described by Plaintiff and their lack of control over any follow-up visits or aftercare by prison medical staff, no plausible

constitutional-violation claim under 42 U.S.C. § 1983[3] or any other federal claim is stated against these Defendants.

Correctional systems are required to provide medical care to inmates. *Helling v. McKinney*, 509 U.S. 25 (1993). In this regard, the *Helling* Court stated,

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being . . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment[.]

509 U.S. at 32 (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)); *see also Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

With respect to medical care, a prisoner seeking compensation in a § 1983 case "must allege acts or omissions sufficiently harmful to evidence *deliberate indifference to serious medical needs*." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (emphasis added). In *Estelle*, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken that were not. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." *Estelle*, 429 U.S. at 105. "Although the Constitution does require that prisoners be

---

[3] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989). The purpose of § 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted) (emphasis added). Although Plaintiff does not specifically cite to § 1983 as the basis for his Complaint, no other viable basis for the exercise of this court's limited subject matter jurisdiction over Plaintiff's allegations is evident from the face of the Complaint.

provided with a certain *minimum level of medical treatment*, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (emphasis added). Although the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *Brown v. Thompson*, 868 F. Supp. 326, 329 n.2, 331 (S.D. Ga. 1994) (collecting cases). The Fourth Circuit Court of Appeals has held that allegations showing excessive delay in providing adequate treatment for a prisoner's medical needs may state a plausible § 1983 claim for medical indifference, especially when the prisoner's allegations show that the delay prolonged pain or increased the injury. *See, e.g.*, *Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013); *Abraham v. McDonald*, 493 F. App'x 465, 466-67 (4th Cir. 2012).

Under *Estelle*, the most that can be said of Plaintiff's allegations against the private doctors who provided urological and surgical care to him is that they, perhaps, show negligence or medical malpractice. His allegations show that these outside (of prison) doctors had only limited contact with Plaintiff and the nature and extent of their treatment was completely dependent upon the SCDC medical staff's authorization for their services to be utilized. Although Plaintiff alleges that some of these doctors' diagnoses and advice was, at best, conflicting, there are no allegations that any of these doctors ever unreasonably refused to treat Plaintiff or to provide care for him whenever Plaintiff was allowed to consult with them. It is true that Plaintiff alleges that Dr. Zubel refused to re-operate on him for six months after he performed a circumcision, but he also alleges that he did have that "revision" surgery in a timely manner and it was performed by Dr. Zubel's "partner," Dr. Lee. The fact that the private physicians' diagnoses and/or treatments did not completely clear up the problems of which

Plaintiff complains or that they did not perform all procedures or provide additional treatment that Plaintiff desires does not mean that they were indifferent to his medical needs. *See Estelle*, 429 U.S. at 105; *Walker v. Peters*, 863 F. Supp. 671, 674 (N.D. Ill. 1994) (under *Farmer v. Brennan*, 511 U.S. 825 (1994), "mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice"). For a claimant to prevail on a constitutional claim, "the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The Fourth Circuit has said, "[d]eliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Id.* at 695. Instead, a prison official (or an outside physician providing service for inmates under contract with a prison or detention center) evinces deliberate indifference to a serious medical need by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05.

Furthermore, the decision of the Supreme Court of the United States in *Farmer v. Brennan*, 511 U.S. 825, does not require that process be issued for Defendant Doctors Zubel, Lee, Pinto, or Hanz in this case because, essentially, the allegations in the Complaint show only a disagreement as to the proper type and amount of medical treatment provided and a possible claim of medical malpractice against these doctors. It is well settled that negligent or incorrect medical treatment (medical malpractice) is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327, 328-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986);

*Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir. 1987); *see Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct[.]"). Also, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *See, e.g.*, *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in *Farmer v. Brennan* held that "repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103-04 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990).

Although claims of negligence and medical malpractice are actionable under South Carolina law, they should be brought *only* in state court *unless* diversity of citizenship is present. *See* S.C. Code Ann. § 15-78-30(a) (South Carolina Torts Claims Act governs negligence actions against a state official or employee); *Browning v. Hartvigsen*, 414 S.E.2d 115, 116-18, 116 n.1, 117 n.2 (S.C. 1992); *see also Willis v. Wu*, 607 S.E.2d 63 (S.C. 2004) (a malpractice action against non-governmental medical personnel; pursued under the state's general tort law). If there is diversity of citizenship and over $75,000 in controversy in a medical malpractice case, it can be heard in this court pursuant to its diversity jurisdiction. The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties *and* an amount in controversy in excess of seventy-five thousand dollars ($75,000.00):

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between --

> (1) citizens of different States[.]

28 U.S.C. § 1332. Complete diversity of parties means that no party on one side may be a citizen of the same state as any party on the other side. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372-74 (1978). There is no diversity of citizenship in this case because Plaintiff and each of the Defendant Doctors Zubel, Lee, Pinto, and Hanz are residents of the state of South Carolina as shown by the allegations in the Complaint and in the service documents submitted by Plaintiff. Compl. 3, ECF No. 1; ECF No. 11. As a result, because Plaintiff has not adequately pleaded deliberate indifference to his medical needs by Defendant Doctors Zubel, Lee, Pinto, or Hanz, and because there is no basis on which this court could consider a malpractice claim against these doctors under diversity jurisdiction, this case is subject to partial summary dismissal without the issuance of process for Defendants Doctors Zubel, Lee, Pinto, and Hanz.

Also, the Complaint should be partially summarily dismissed insofar as it seeks to hold Defendant "Brian Shirley," whom Plaintiff identifies as "Director of SCDC," ECF No. 1 at 1, liable under § 1983 or any other federal law for any constitutional violation. "Shirley" is an obvious misspelling of the name of the current SCDC Director: Bryan P. Stirling. *See* http://www.doc.sc.gov/pubweb/ (last consulted Sept. 9, 2014). Hereinafter, the court refers to this Defendant as "Shirley/Stirling." As an initial matter, there are no allegations in Plaintiff's Complaint that even mention Defendant Shirley/Stirling. This absence of allegations naming Shirley/Stirling alone shows that Plaintiff's inclusion of this person as a defendant in this case is improper and frivolous. *See Cochran v. Morris*, 73 F.2d 1310 (4th Cir. 1996) (statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually baseless); *Weller v. Dep't of Soc. Servs.*, 901 F.2d at 389 n.2 (dismissal proper when there were

no allegations to support claim). In absence of substantive allegations of wrongdoing against Defendant Shirley/Stirling, there is nothing from which this court can liberally construe any type of viable cause of action arising from the Complaint. It is well settled that federal courts performing their duties of construing pro se pleadings are not required to be "mind readers" or "advocates" for state prisoners or other pro se litigants. *See Beaudett v. City of Hampton*, 775 F.2d at 1278; *Gordon v. Leeke*, 574 F.2d at 115.

Second, there are no allegations showing Director Shirley/Stirling had any personal involvement in any of the medical decisions made by SCDC medical staff concerning the nature and/or extent of care or treatment provided to Plaintiff. The United States Supreme Court and the Fourth Circuit Court of Appeals have held that to state a plausible § 1983 claim against any particular public official, a "causal connection" or "affirmative link" must exist between the conduct of which the plaintiff complains and the official sued. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012). A plaintiff suing a government official in his individual capacity and thereby seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right. *See Graham*, 473 U.S. at 166.

That Defendant Shirley/Stirling is the overall supervisor or "Director" of SCDC does not, in itself, provide the type of personal involvement required to state a plausible § 1983 claim against him. As a general rule, the doctrine of vicarious liability or respondeat superior is not available to a § 1983 plaintiff as a means to create liability of a state-actor supervisor for the acts or his/her subordinate. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There is a limited exception to the prohibition against imposing respondeat superior or vicarious liability

on supervisory personnel in § 1983 cases, and that exception has been enunciated in cases such as *Slakan v. Porter*, 737 F.2d 368, 370-75 (4th Cir. 1984). Supervisory officials like SCDC Director Shirley/Stirling may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates so long as the facts alleged satisfy the Fourth Circuit Court of Appeals' established three-part test for supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). In *Randall v. Prince George's County*, 302 F.3d 188, 206 (4th Cir. 2002), the Fourth Circuit concluded that, "[u]nder the first prong of *Shaw*, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" Furthermore, in establishing "deliberate indifference" under *Shaw's* second prong, a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id*. (quoting *Slakan*, 737 F.2d at 373).

The *Slaken* exception is not adequately pleaded in this case because there are no allegations of any personal knowledge (or even subjective knowledge) of the problems that Plaintiff alleges he has been having with the SCDC medical staff on the part of Defendant

13

Shirley/Stirling. Thus, regardless of how pervasive the alleged problems at Perry or any other SCDC prison might be, Defendant Shirley/Stirling cannot be found liable for them simply based on his job as the overall "supervisor" at SCDC. Moreover, there are no allegations from which any potential responsibility of Shirley/Stirling for an unconstitutional SCDC policy or custom could be construed. The lack of any allegations establishing a plausible § 1983 claim against Defendant Shirley/Stirling requires that the Complaint be partially summarily dismissed insofar as it seeks to hold him liable to Plaintiff for any relief.

IV.     Recommendation

Accordingly, it is recommended that the district court partially dismiss the Complaint in this case *without prejudice* insofar as it seeks to impose liability for any relief on Defendants Doctors Zubel, Lee, Pinto, Hanz, or Director Shirley/Stirling. *See Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal). The Complaint should be served on the remaining Defendants.

IT IS SO RECOMMENDED.

September 10, 2014                                                Kaymani D. West
Florence, South Carolina                                       United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).